IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**JANELL HOWARD**,

           Plaintiff,

      v.

**CITY OF COOS BAY**, an Oregon
Municipal Corporation; and **RODGER
CRADDOCK**, in his individual capacity,

           Defendants.

_____

**Civ. No. 6:12-cv-01372-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Between 1998 and September 2008, plaintiff Janell Howard worked as Finance Director for the City of Coos Bay. During her employment, plaintiff contested a supplemental accounting bill submitted by Robert Wall for work performed during a 2006 financial audit. Plaintiff's supervisor, Joyce Jansen (subsequently Charles Freeman), along with other City officials, sided with Wall. Plaintiff, despite City opposition, filed a complaint against Wall with the Oregon Board of Accountancy. Plaintiff was subsequently terminated on September 16, 2008.

    Plaintiff filed a complaint (*Howard I*) against Coos Bay and Freeman for unlawful termination. During the *Howard I* litigation, plaintiff applied for her former position with the city, but was notified in a rejection letter that she would not be considered. The *Howard I* trial commenced on October 31, 2011, and lasted until November 2, 2011. At trial, plaintiff successfully introduced the rejection letter for purposes of damages. The jury, having considered the letter, awarded plaintiff $201,000 in damages. On July 30, 2012, plaintiff filed this complaint

1 – OPINION AND ORDER

(*Howard II*) against Coos Bay and Rodger Craddock for retaliation (i.e., failing to consider her employment application) under 42 U.S.C. § 1983 and ORS § 659A.230.

This Court is asked to consider whether plaintiff's *Howard II* claims are barred by claim or issue preclusion because of the *Howard I* verdict. Because (1) the two actions arise out of the same transactional nucleus and (2) plaintiff previously had a full and fair opportunity to explain her damages resulting from the rejection letter, this Court finds that plaintiff's current claims are barred. Thus, defendants' motion for summary judgment, ECF No. 42, is GRANTED.

## PROCEDURAL AND FACTUAL BACKGROUND

This action arises out of an alleged retaliatory hiring decision occurring between November 1, 2011, and November 7, 2011. *See, e.g.*, Decl. of Rodger Craddock 5, ECF No. 44 (indicating November 1, 2011); Supplemental Decl. of Counsel 1, ECF No. 55-6 (indicating sometime on or after November 3, 2011). Between 1998 and September 2008, Coos Bay employed plaintiff as Finance Director. *See Howard v. City of Coos Bay*, Civil No. 09–6257–AA, 2011 WL 899619, *1 (D. Or. Mar. 9, 2012) (*Howard I*). On September 16, 2008, Coos Bay terminated plaintiff's employment. *Id.* at 2. On September 14, 2009, plaintiff filed a complaint, *Howard I*, against Coos Bay and Freeman.[1] Pl.'s Compl. 1–13, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 1. Plaintiff subsequently amended her complaint on October 26, 2010. Pl.'s Am. Compl. 17, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 24.

In *Howard I*, plaintiff asserted five claims, including: (1) First Amendment Retaliation, 42 U.S.C. § 1983; (2) Fourteenth Amendment Due Process, 42 U.S.C. § 1983; (3) Fourteenth Amendment Due Process Liberty Interest, 42 U.S.C. § 1983; (4) Retaliation for Whistleblowing, ORS § 659A.203; and (5) Wrongful Discharge. *Id.* at 10–16. On March 9, 2011, Judge Aiken

---

[1] Charles Freeman was formerly plaintiff's supervisor. *See Howard I*, 2011 WL 899619 at *1.

awarded defendants summary judgment on all claims except for plaintiff's First Amendment Retaliation claim.[2] *See Howard I*, 2011 WL 899619 at *12.

Jury trial commenced in *Howard I* on October 31, 2011, with the jury reaching a verdict in favor of plaintiff on November 2, 2011. Minutes of Proceedings, Nov. 22, 2011, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 105. The jury found that "defendants took adverse employment action against plaintiff in connection with her termination because of her complaint to the Oregon Board of Accountancy." Verdict Form 2, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 109. As a result, the jury awarded plaintiff:

    A. Economic Damages: $150,000

    B. Non-Economic Damages: $50,000

    Total Damages: $200,000

*Id*. Plaintiff was also awarded $1,000 in punitive damages against Freeman. *Id*. at 2–3. Plaintiff's sought economic damages included: lost income; lost benefits and seniority; commuting and housing expenses; loss of future income; and impairment of earning capacity. Pl.'s Am. Compl. 10–11, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 24. Plaintiff testified at length as to her loss of future income. *See* Decl. of Robert E. Franz 4, ECF No. 45-8.[3] As to her non-economic

---

[2] In her First Amendment Retaliation claim, plaintiff contended that defendants took adverse action against her for "sp[eaking] as a private citizen when she filed a complaint with the Oregon Board of Accountancy." Verdict Form 1, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 109.

[3] The following is an excerpt from plaintiff's direct examination. That testimony, in part, provides:

        **Question**. And did you run a calculation of - - you know, keeping in mind the pay differential between the city of Coos Bay and your current position, did you run out a calculation of what your future lost wages would be if you continued to work at that lower salary compared to Coos Bay?

        **Answer**. Yes.

        **Question**. And what was that?

        **Answer**. It was $778,864.

damages, plaintiff's sought damages included: significant emotional distress; public humiliation; damage to her reputation; depression; loss of dignity and self-esteem; anxiety; loss of companionship of her family throughout the week; and loss of enjoyment of life. Pl.'s Am. Compl. 10–11, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 24.

In this action, *Howard II*, plaintiff contends that defendants unlawfully refused to consider her application to fill her former position as Finance Director for Coos Bay. *See* Pl.'s Compl. 4, ECF No. 1 ("Defendants failed to give [plaintiff] the open City Finance Director position . . . ."). Following plaintiff's termination on September 16, 2008, Coos Bay hired Rae Lea Cousens as Finance Director. Cousens worked in that capacity until May 2, 2011, when she tendered her notice of retirement. Decl. of Rodger Craddock 2, ECF No. 44. Cousens retirement became effective May 27, 2011. *Id*. On May 4, 2011, Craddock appointed Susanne Baker as Acting Finance Director, while "a search for a replacement for Ms. Cousens was conducted." *Id*.

Between June 10, 2011, and July 8, 2011 (Application Period I), Coos Bay received 29 applications for the Finance Director position, including an application from plaintiff. *Id*. at 2–3. On July 6, 2011, Craddock notified plaintiff by letter that she would not be considered for the vacant position. That letter provided:

> I am in receipt of your request to be considered for the open position of Finance Director with the City of Coos Bay. Unfortunately, as your prior employment with the City was terminated for cause, I am not in a position to consider you for the current position. I do wish you the best with your continued employment with the City of Brookings.

Decl. of Robert E. Franz, Jr. 1, ECF No. 45-13. In *Howard I*, the jury considered this letter for purposes of damages, independent of plaintiff's duty to mitigate. *See infra* § I(B). Coos Bay subsequently interviewed the top applicants from the remaining pool, but none of the candidates were ultimately hired. Decl. of Rodger Craddock 3, ECF No. 44.

4 – OPINION AND ORDER

Coos Bay commenced Application Period II on August 29, 2011. *Id*. at 4. Between August 29, 2011, and the end of the application period, September 30, 2011, Coos Bay received 23 applications. *Id*. Coos Bay interviewed the top three applicants on October 25, 2011, but found that "none of [them] were acceptable." *Id*. That same day, Craddock asked Baker whether "she would consider taking the Finance Director position permanently." *Id*. On October 26, 2011, Baker allegedly accepted the offer. *Id*. On October 28, 2011, Craddock asked Baker and Amy Kinnaman[4] for biographical statements in preparation for announcement of their respective appointments. *Id*. at 4–5. On November 2, 2011, at 2:43 p.m., Baker emailed Craddock her biographical statement. *See* Decl. of Robert E. Franz, Jr. 1, ECF No. 45-19. On November 4, 2011, Coos Bay, announced the promotions of Baker and Kinnaman through a "City Update." *Id*. at 1, ECF No. 45-20. This announcement came two days after the jury rendered a verdict in *Howard I*.

## STANDARD OF REVIEW

This Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id*. The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-

---

[4] On October 26, 2011, "it was decided that Amy Kinnaman would be appointed as the Deputy Finance Director." Decl. of Rodger Craddock 4, ECF No. 44.

5 – OPINION AND ORDER

moving party must present "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

## DISCUSSION

Defendants contend that plaintiff's claims are barred by (1) claim preclusion and (2) issue preclusion.[5] Because this Court finds that plaintiff's claims are barred by both claim and issue preclusion, this Court declines to discuss the merits of plaintiff's retaliation claims under 42 U.S.C. § 1983 and ORS § 659A.230.

## I. Claim Preclusion

"Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). This Court applies federal[6] claim preclusion "when there is: '(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties.'" *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)). The parties do not dispute the second and third factors.

In determining the first factor, this Court applies four criteria to decide whether there is an identity of claims. Those criteria include:

> "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."

[5] This Court uses the term "claim preclusion" instead of "res judicata" and "issue preclusion" instead of "collateral estoppel."
[6] *See, e.g.*, *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 n. 10 (9th Cir.2003) (citing *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 n. 11 (9th Cir. 1992)).

6 – OPINION AND ORDER

*Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (quoting *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011)). "The fourth criterion is the most important." *Harris*, 682 F.3d at 1132 (citations omitted). Because the fourth criterion is "outcome determinative," this Court's inquiry begins with that analysis. *See ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010) (quoting *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 988 (9th Cir. 2005)).

"Whether two suits arise out of the 'same transactional nucleus' depends on 'whether they are related to the same set of facts and *whether they could conveniently be tried together*.'" *ProShipLine Inc.*, 609 F.3d at 968 (quoting *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) (emphasis in original). As stated in the Restatement (Second) of Judgments § 24 cmt. d (1982):

> d. *Successive acts or events as transaction or connected series; considerations of business practice.* When a defendant is accused of . . . acts which though occurring over a period of time were substantially the same sort and similarly motivated, fairness to the defendant as well as the public convenience may require that they be dealt with in the same action. The events constitute but one transaction or a connected series . . . .

(emphasis in original); *see also Sutliffe v. Epping School Dist.*, 584 F.3d 314, 328 (1st Cir. 2009) (citing Restatement (Second) of Judgments § 24 cmt. d (1982) in applying the transactional approach); *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 111 (2d Cir. 2000) (discussing Restatement (Second) of Judgments § 24 cmt. d, illus. 7–8).

Defendants contend that under *W. Sys., Inc.*, 958 F.2d at 871, "the two actions arise out of the same transactional nucleus" because (A) they are related to the same set of facts and (B) they could conveniently be tried together. Defs.' Mem. in Supp. of Mot. Summ. J. 31, ECF No. 43. This Court addresses each argument in sequence.

7 – OPINION AND ORDER

**A. Related to the Same Set of Facts**

As to defendants' first argument, this Court notes the importance of correctly framing plaintiff's alleged harm. In *Howard I*, plaintiff sought "front pay"[7] in lieu of reinstatement. Any "right" to reinstatement that plaintiff may have possessed was foreclosed by this sought relief. *See also* analysis *infra* § II (finding that plaintiff's sought economic damages are precluded by issue preclusion). In contrast, plaintiff *did* continue to have a right to have her employment application considered. On or about July 6, 2011, plaintiff became aware that this "consideration" right may have been violated. Plaintiff contends that this right was violated repeatedly[8] until Baker was ultimately hired sometime between November 1 and November 7, 2011. To the extent that plaintiff alleges repeated "consideration" violations, those violations "constitute . . . a connected series" beginning with the rejection letter. *See* Restatement (Second) of Judgments § 24 cmt. d (1982). This "connected series" is analogous to:

> When a person trespasses daily upon the land of another for a week, although the owner of the land might have maintained an action each day, such a series of trespasses is considered a unit up to the time when action is brought.

*Id*.; *see also Waldman*, 207 F.3d at 111 (affirming issue preclusion despite presence of facts arising after plaintiff filed his complaint).

The remaining issue is therefore, whether plaintiff's *Howard II* "consideration" violations also arise out of the same transactional nucleus of facts as her *Howard I* "termination" violation. Plaintiff distinguishes her claims as follows:

---

[7] "Front pay" is "simply money awarded for lost compensation . . . in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001).
[8] Plaintiff contends that "[u]nder City policy, her application, having been filed, did not need to be refiled for at least the following year." Pl.'s Resp. to Defs.' Mot. Summ. J. 10 n. 6, ECF No. 52 (citing Supplemental Decl. of Counsel 2, ECF No. 55-1).

> [Howard I] addressed the retaliation and termination attendant upon plaintiff's complaint against Robert Wall, the CPA who had contracted to do the City audit.

> [Howard II] [is] directed toward the defendants' failure to hire plaintiff for the vacancy for which she was eminently qualified, particularly after the jury's verdict in Howard I conclusively demonstrate that defendants' ostensible reason for failing to rehire plaintiff was no longer legally tenable.

Pl.'s Resp. to Defs.' Mot. Summ. J. 10, ECF No. 52. Put differently, plaintiff alleges that

*Howard I* addressed her termination and this case, *Howard II*, addresses defendants' refusal to

consider her employment application based upon the same unlawful *Howard I*-animus.

Turning to the Restatement, this Court finds illustration 6 particularly relevant.

Illustration 6 provides:

> On the false accusation that A was engaging in disorderly conduct at a racetrack, B Co., the owner of the track, caused A in successive acts to be assaulted, slandered, physically detained, and prosecuted criminally. A sues B Co. for the assault and slander. If a judgment is rendered that extinguishes the claim, A may not maintain a second action for the detention or for malicious prosecution.

Restatement (Second) of Judgments § 24 cmt. d, illus. 6 (1982). Plaintiff's claims in this case,

like those in *Howard I*, stem from Howard's employment relationship with Coos Bay. Upon

contesting Mr. Wall's supplemental accounting bill in October 2006, plaintiff was steadily

subjected to retaliatory animus culminating in her termination in September 2008. Between

October 2006 and September 2008, plaintiff alleged that she was: chastised in October 2006;

pressured in November 2006 by Mayor McKeown; informed in January 2007 that Mayor

McKeown "wanted her gone;" informed in June 2007 that City Council members were still upset

that plaintiff had not been fired; suspended from work in June 2007; excessively scrutinized by

Freeman until September 2008; and terminated in September 2008. Pl.'s Am. Compl. 4–7, Civil

No. 6:09-cv-06257-AA, *Howard I*, ECF No. 24. Plaintiff's rejection letter, like the physical

9 – OPINION AND ORDER

detention and criminal prosecution in illustration 6 above, constitutes an act, part of a succession of acts, that was "substantially the same sort and similarly motivated" as those acts alleged in the prior action. *See* Restatement (Second) of Judgments § 24 cmt. d (1982). In fact, the *Howard I* jury *considered* plaintiff's rejection letter from July 2011 because it was relevant to plaintiff's retaliation damages, independent of mitigation.

Although plaintiff filed this as a new action, she is "essentially seeking relief from the same alleged wrongs [she][]successfully protested before." *Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1078. Plaintiff again seeks to be compensated for not being employed as Coos Bay Finance Director. Because this Court finds that this case is "related to the same set of facts" as *Howard I*, this Court must ascertain if "the claims could have been brought in the earlier action." *Id*.

**B. Amendment and Trial Convenience**

As to defendants' second argument, the Ninth Circuit generally adheres to the so-called majority rule regarding claims for damages. *See, e.g.*, *Harkins Amusement Enters., Inc. v. Harry Nace Co.*, 890 F.2d 181, 183 (9th Cir. 1989) ("Obviously the allegation that the defendants entered into conspiracies after the date of the Harkins I complaint was not ruled upon by the decision in Harkins I."); *L.A. Branch NAACP v. L.A. Unified Sch. Dist.*, 750 F.2d 731, 739 (9th Cir. 1984) (indicating that claim preclusion did not bar plaintiffs from litigating matters occurring after the commencement of litigation). Under this majority rule, "an action need include only the portions of the claim due at the time of commencing that action" because "the opportunity to file a supplemental complaint is not an obligation." 18 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 4409 (2d ed. 2002); *see also Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369–70 (2d Cir. 1997) ("Altai

10 – OPINION AND ORDER

was under no obligation to amend its complaint . . . and res judicata does not bar litigation of claims arising from transactions which occurred after the . . . action was brought."); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 915 (7th Cir. 1993) (finding that plaintiff "should not have been forced to amend her complaint to include" allegations that arose after her initial complaint was filed).

Plaintiff filed her amended complaint in *Howard I* on October 26, 2010. Pl.'s Am. Compl. 10–11, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 24. On June 6 and June 13, 2011, plaintiff submitted her application for the vacant Finance Director position. Decl. of Rodger Craddock 2, ECF No. 44. On or about July 6, 2011, plaintiff received written notice that she would not be considered because she had previously been terminated "for cause." Decl. of Robert E. Franz, Jr. 1, ECF No. 45-13. On October 24, 2011, the parties attended the final pretrial conference. *See* Decl. of Robert E. Franz, Jr. 1–2, ECF No. 45-7. At the pretrial conference, plaintiff successfully moved to include the rejection letter for jury consideration:

> [**Plaintiff's Counsel**]: And so number three is the hiring procedure policy and that is - - could be coupled with number 44, which is the rejection letter of Janell Howard when she applied for the vacant City of Coos Bay position in June of 2011. And the theory is that this is *continued retaliation for her protected speech*.

> [**Defendants' Counsel**]: Your honor, our objection is simply that that's not relevant to this claim. It's now another different city manager. Again, it's not a *Monell* claim against the City for . . . . It's the defendants' position - - this letter is after Ms. Howard again applied for the - - an open finance director position long after she left and found other employment. Mr. Craddock is now the city manager, and he wrote her saying, "Because you were discharged for cause, we're not going to consider you for this now open finance position that just happened this summer." So that's another claim. That's another set of circumstances. It's outside the scope of this lawsuit. It's a different city manager. So it's not relevant.

> [**Judge Aiken**]: Except it does go to damages.

[**Defendants' Counsel**]: We're not - - she - - the plaintiff raised that. We're not claiming that she's failed to mitigate her damages in any way.

[**Judge Aiken**]: She still - - I think it's *still relevant with regard to damages.* So 44 is - - on that basis, is in . . . .

*Id.* (emphasis added). As indicated, Judge Aiken's order admitted the letter for purposes of *damages*.

If this Court adheres strictly to the majority rule identified above, then plaintiff's retaliation claims stemming from the rejection letter are not barred by claim preclusion because the factual circumstances arose after the amended complaint. *See, e.g.*, *Harkins*, 890 F.2d at 183 ("In our case, even if the complaint were read narrowly as the defendants wish, the plaintiff alleges facts which by the defendants' own concession are at least 10 percent different from the facts alleged in Harkins I . . . .").

However, as indicated by the Ninth Circuit, this Court's "identity" analysis appears to be more flexible depending on the nature of the underlying factual allegations. *See, e.g.*, *United States v. Oregon*, 470 F.3d 809, 817 (9th Cir. 2006) ("A claim is also precluded if that claim could have been asserted in the prior litigation." (citation omitted)); *Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1078 ("[new claims] may still be subject to res judicata finding if the claims could have been brought in the earlier action."); *see also Liquidators of European Fed. Credit Bank*, 630 F.3d at 1150 ("We have long recognized the flexibility inherent in the res judicata determination with respect to identity of claims." (citation omitted)). "In most cases, the inquiry into the same transactional nucleus of facts is essentially the same as whether the claim could have been brought in the first action." *Turtle I. Restoration Network v. United States Dept. of State*, 673 F.3d 914, 918 (9th Cir. 2012) (citation and internal quotation marks omitted); *see also People of the State of California v. Chevron Corp.*, 872 F.2d 1410, 1415 (9th Cir. 1989)

("[F]actual matters, such as the conduct of the parties since the *first judgment*, must be considered." (emphasis added)).

Plaintiff received her rejection letter on or about July 6, 2011. Plaintiff did not move for consideration of this letter as an additional retaliatory act until October 24, 2011, a week prior to trial. The issue is whether plaintiff could have (1) brought the letter as an additional substantive violation through pleading amendment and (2) added defendant Craddock as a party if she had made timely requests. *See, e.g.*, *Mpoyo*, 430 F.3d at 989 ("Denial of leave to amend in a prior action based on dilatoriness does not prevent application of res judicata in a subsequent action.").

### i. Pleading Amendment

FRCP 15 proscribes two possible paths for pre-trial pleading amendment. First, a plaintiff should freely receive leave to amend "when justice so requires." FRCP 15(a)(2). Second, a plaintiff, upon motion and reasonable notice, may be permitted "on just terms" to "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading . . . ." FRCP 15(d). Because plaintiff's "consideration" violation allegations arose *after* she filed her amended complaint, this Court focuses on FRCP 15(d). *See, e.g.*, *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010) (citation omitted).

"[L]eave to permit supplemental pleadings is favored, [but] it cannot be used to introduce "a separate, distinct and new cause of action." *Planned Parenthood of S. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (citations and internal quotation marks omitted). As indicated *supra* § I(A), this Court considers the rejection letter not a separate, distinct, and new cause of action; but rather a part of the *Howard I* transaction or connected series. Permitting plaintiff to add the rejection letter as a substantive violation would have "serve[d] to promote judicial efficiency, the goal of Rule 15(d)." *Id*. Instead, this Court is now faced with a plaintiff seeking

13 – OPINION AND ORDER

economic and non-economic damages stemming from plaintiff's rejection letter for the *second time.*

Plaintiff, having received the rejection letter on or about July 6, 2011, did not act until October 24, 2011. Although Judge Aiken set trial and pretrial conference dates on July 11, 2011, this Court finds that the substantive retaliation violation stemming from the rejection letter could have been considered "on just terms" because it arose from the same animus, involved the same employment relationship, and involved Craddock, a witness previously deposed on the subject matter (e.g., plaintiff's witness list provided that Craddock would "testify as to the receipt of [plaintiff's] July 2011 application for the open City Finance Director position and the rejection letter he sent her.") Pl.'s Revised Witness List 6, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 95. Accordingly, plaintiff's current retaliation claims under 42 U.S.C. § 1983 and ORS § 659A.230 against defendant Coos Bay are barred by claim preclusion because they could have been brought in the first action.

**ii. Joinder of Rodger Craddock**

FRCP 21 enables a court, to add a party "on just terms." *See also Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) ("Since Rule 21 does not provide any standards . . . courts have looked to Rule 20 for guidance." (citation omitted)). As discussed *supra* § I(A), plaintiff's current claim against Craddock arose out of the same transaction or occurrence as her *Howard I* claims and involved common questions of fact and law (i.e., whether plaintiff's termination constituted unlawful retaliation). *See* FRCP 20(a)(2). Craddock was previously deposed and identified as a trial witness prepared to testify as to the rejection letter and surrounding circumstances. Thus, this Court finds that Craddock could have been added as a defendant in *Howard I* "on just terms" without prejudicing either party. *See*

14 – OPINION AND ORDER

*Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) ("[A] district court must examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." (citation and internal quotation marks omitted)). Rather than causing prejudice, adding Craddock would have ensured judicial economy by precluding the current action. Accordingly, plaintiff's current retaliation claim under 42 U.S.C. § 1983 against defendant Craddock is barred by claim preclusion because it could have been brought in the first action.

## II. Issue Preclusion

"Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire*, 532 U.S. at 748–49. Defendants contend that "plaintiff is precluded from recovering the same damages she was already awarded in *Howard I*." Defs.' Mem. in Supp. of Mot. Summ. J. 22, ECF No. 43.

The party asserting issue preclusion "must first show that the estopped issue is identical to an issue litigated in a previous action." *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995) (citing *United States Aluminum Corp./Texas v. Alumax, Inc.*, 831 F.2d 878, 881 (9th Cir. 1987)), *amended by Kamilche v. United States*, 75 F.3d 1391 (9th Cir. 1996). This Court looks to four factors for guidance:

> (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
>
> (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?

15 – OPINION AND ORDER

(3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?

(4) how closely related are the claims involved in the two proceedings?

*Kamilche Co.*, 53 F.3d at 1062 (quoting Restatement (Second) of Judgments § 27 cmt. c (1982)).

As to damages, this Court finds that there is a substantial overlap between the evidence and arguments made in *Howard I* and plaintiff's demand for damages in this case. The sought damages appear identical and in both cases rely largely upon the same evidence (e.g., plaintiff's "front pay" calculation).

As to plaintiff's economic damages, in *Howard I* she sought economic damages for her unlawful *termination*, including: lost income; lost benefits and seniority; commuting and housing expenses; loss of future income; and impairment of earning capacity. Pl.'s Am. Compl. 10–11, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 24. Plaintiff sought $897,265 in economic damages, Official Court Transcript 71, Nov. 2, 2011, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 120, but was awarded $150,000, Verdict Form 2, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 109. This Court previously characterized these sought damages as "front pay" in lieu of reinstatement. *See supra* § I(A).

Plaintiff, in *Howard II*, seeks economic damages for *not being hired* for the same position, including: lost income, lost benefits and seniority, housing expenses; loss of future income; and impairment of earning capacity. Pl.'s Compl. 4–6, ECF No. 1. Plaintiff argues that "[t]he verdict awarding plaintiff's damages in *Howard I* did not specify what the damages were for." Pl.'s Resp. to Defs.' Mot. Summ. J. 11, ECF No. 52. However, this Court is "'allowed to draw necessary inferences from the prior adjudication in order to determine whether an issue was actually decided.'" *Disimone v. Browner*, 121 F.3d 1262, 1268 (9th Cir. 1997) (quoting

16 – OPINION AND ORDER

*Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, Inc.*, 106 F.3d 894, 901 (9th Cir. 1997)); *see also Ag Servs. of America, Inc. v. Nielsen*, 231 F.3d 726, 732 (10th Cir. 2000) ("The true test is whether the jury verdict by necessary implication reflects the resolution of a common factual issue.").

As in *Howard I*, plaintiff seeks compensation for *not being employed* as Coos Bay Finance Director. The economic damages associated with plaintiff *not being hired* are indeed identical to the economic damages she sought for being *terminated* from the same position. To the extent that differences exist, the *Howard I* jury was allowed to consider damages flowing from the rejection letter. Because plaintiff had a full and fair opportunity to explain her rejection letter based economic damages, *see supra* note 3, and argue her case before the jury, *see, e.g.*, Official Court Transcript 71, Nov. 2, 2011, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 120, she is now precluded from seeking additional damages, even if they arose in part after the *Howard I* jury verdict, *see* Restatement (Second) of Judgments § 25 cmt. c (1982).[9] Accordingly, plaintiff is barred by issue preclusion in the instant case from seeking: lost income, lost benefits and seniority, housing expenses; loss of future income; impairment of earning capacity; and compensatory damages under her asserted claims. *See Chevron Corp.*, 872 F.2d at 1414 ("[T]he district court should take all necessary steps to ensure that the plaintiff is not permitted double recovery for what are essentially two different claims for the same injury." (citation omitted)); *see also Diversified Graphics Ltd. v. Groves*, 868 F.2d 293, 295 (8th Cir. 1989) ("In instances

---

[9] Restatement (Second) of Judgments § 25 cmt. c (1982), in the context of claim splitting, provides:

> Typically, even when the injury caused by an actionable wrong extends into the future and will be felt beyond the date of judgment, the damages awarded by the judgment are nevertheless supposed to embody the money equivalent of the entire injury. Accordingly, if a plaintiff who has recovered a judgment against a defendant in certain amount becomes dissatisfied with his recovery and commences a second action to obtain increased damages, the court will hold him precluded; his claim has been merged in the judgment and may not be split.

where a party's claims are simply alternative theories seeking relief for the same injury, that party is not entitled to a separate compensatory damage award under each legal theory." (citation and internal quotation marks omitted)).

As to plaintiff's non-economic damages, in *Howard I* she sought non-economic damages for her unlawful *termination*, including: significant emotional distress; public humiliation; damage to her reputation; depression; loss of dignity and self-esteem; anxiety; loss of companionship of her family throughout the week; and loss of enjoyment of life. Pl.'s Am. Compl. 11, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 24. Plaintiff sought up to $500,000 in non-economic damages, *infra* note 10, but was awarded $50,000, Verdict Form 2, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 109.

Plaintiff, in *Howard II*, seeks non-economic damages for *not being hired* for the same position, including emotional distress. However, plaintiff previously had a full and fair opportunity to explain her rejection letter based non-economic damages, *see, e.g.*, Official Court Transcript 79–80, Nov. 1, 2011, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 119, and argue her case before the jury, *see, e.g.*, Official Court Transcript 71, Nov. 2, 2011, Civil No. 6:09-cv-06257-AA, *Howard I*, ECF No. 120.[10] Plaintiff is not now entitled to argue again for previously litigated non-economic damages. *See also supra* note 10. Accordingly, plaintiff is barred by issue preclusion in this case from seeking additional damages for emotional distress.

---

[10] Plaintiff's counsel argued:

> The emotional distress she suffered is also something that you are going to be asked to contemplate in your deliberations . . . . Now, sometimes those losses are even bigger than the losses on the economic side, and you may decide that that's the case here . . . . you may decide that . . . her noneconomic losses are worth two years of her salary, so that would be $180,000. You may find that it's worth $500,000.

Combined, this Court's issue preclusion findings bar plaintiff's sought relief, and therefore plaintiff's claims under 42 U.S.C. § 1983 and ORS § 659A.230. *See Kamilche Co.*, 53 F.3d at 1063 ("[O]nce an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case." (citation and internal quotation marks omitted) (emphasis in original)); Restatement (Second) of Judgments § 27 cmt. b (1982) ("If, as more frequently happens, the second action is brought on a different claim, the rule of this Section also applies; in such cases, preclusion is sometimes designated as collateral estoppel.").

## CONCLUSION

For these reasons, defendants' motion for summary judgment, ECF No. 42, is GRANTED.


IT IS SO ORDERED.


DATED this 13th day of May, 2014.


_____/s/ Michael J. McShane_____
**Michael J. McShane**
**United States District Judge**

19 – OPINION AND ORDER